**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| YODIE BAKER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1792 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 21 |
| | : | | |
| D.C. PUBLIC SCHOOLS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES & COSTS**

**I. INTRODUCTION**

This matter comes before the court on the plaintiff's motion for attorney's fees and costs. The plaintiff is the mother of a minor child who is entitled to the protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. She commenced this action seeking $11,448.25 in attorney's fees that she incurred while prosecuting an administrative claim pursuant to the IDEA.[1]  The defendants, the District of Columbia Public Schools ("DCPS") and the District of Columbia, concede that the plaintiff prevailed in the underlying merits hearing, but they dispute the reasonableness of the requested fees.

Because the plaintiff is the prevailing party and because some of the requested fees are reasonable, the court grants in part the plaintiff's motion for attorney's fees and costs.  Because certain fee requests by the plaintiff are inappropriate and deficient, however, the court denies in part the plaintiff's motion.  Accordingly, the court grants the plaintiff an award of reduced fees.

---

[1]    The plaintiff miscalculated the balance due on her original invoice.  *See* Defs.' Opp'n Mot., Ex. A, DCPS Objections to Yodie Baker Invoice, at 1.  The correct sum is $11,448.25.  *See id.*  The court refers to the correct amount in its memorandum opinion.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff's minor child is enrolled in the District of Columbia Public Schools ("DCPS") and is entitled to the protections afforded by the IDEA.  Am. Compl. ¶ 2.  In September 2008, the plaintiff filed an administrative due process complaint against the DCPS and the District of Columbia alleging that the defendants failed to provide a Free and Appropriate Public Education ("FAPE") to her child as required under the IDEA.  *Id.* at ¶ 4. After a hearing on the merits in November 2008 ("November 2008 merits hearing"), the hearing officer issued a Hearing Officer Determination ("HOD") granting the plaintiff the relief that she had been seeking.  *Id.* at ¶ 5.  During the course of such administrative proceedings, the plaintiff had been represented by the Law Offices of Christopher N. Anwah.  *Id.* at 2.

The plaintiff then submitted an IDEA fee petition for attorney's fees and costs to the defendants, for a total amount of $15,628.95.  Pl.'s Mot. at 1-2.  The defendants only reimbursed the plaintiff in the amount of $4,000.00, however, creating a difference of $11,448.25 between what the plaintiff believed she was owed and what the defendants had paid.[2]  *Id.*; Defs.' Opp'n, Ex. A, at 1 n. 2.

In August 2009, the plaintiff filed an action in the Superior Court of the District of Columbia, seeking recovery of the outstanding balance of $11,448.25 on her IDEA fee petition. Am. Compl. ¶ 4.  The following month, the defendants removed the action to this court.  *See* Notice of Removal.  The plaintiff later filed an amended complaint in July 2010.  *See generally* Am. Compl.  After attempts at mediation proved unsuccessful, the plaintiff filed the instant motion for attorney's fees and costs.  *See generally* Pl.'s Mot.  In her motion, the plaintiff

---

[2]      The plaintiff conceded that certain charges, which total $180.70, are not owed.  Pl.'s Mot. at 7. The final attorney's fee award will therefore be reduced accordingly.

continues to seek the $11,448.25 that she contends is still due. *Id.* at 2. With this motion ripe for consideration, the court turns to the parties' arguments and to the applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for Attorney's Fees Under the IDEA

Federal Rule of Civil Procedure 54(d) requires that a party seeking "attorney's fees and related non-taxable expenses" must file a motion with the court. FED. R. CIV. P. 54(d)(2)(A). The motion "must specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii). It must also state the amount sought in attorney's fees, or provide a fair estimate of such amount. FED. R. CIV. P. 54(d)(2)(B)(iii); *see also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorney['s] fees" so long as they are the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). A court's determination of the appropriate attorney's fees, in other words, is based on a two-step inquiry. First, the court must determine whether the party seeking attorney's fees is the prevailing party. *Id.* A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court should determine whether the attorney's fees sought are reasonable. 20 U.S.C. § 1415(i)(3)(B). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).  An attorney's hourly rate for IDEA actions in the District of Columbia is typically considered reasonable if it conforms to the *Laffey* Matrix, a chart of hourly rates based upon attorneys' respective years of experience.  *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorney's fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

The plaintiff bears the burden of demonstrating that the number of hours that its counsel has spent on a particular task is reasonable.  *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004).  The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed [in order] to 'permit the District Court to make an independent determination [of] whether or not the hours claimed are justified.'"  *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  Once the plaintiff has provided the court with such information, a "presumption arises [in the plaintiff's favor] that the number of hours billed is reasonable[,] and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours."  *Herbin*, 2006 WL 890673, at *5.

4

**B.  The Court Grants in Part and Denies in Part the Plaintiff's
Motion for Attorney's Fees**

**1.  The Reasonableness of the Number of Hours Billed by the Plaintiff's Counsel[3]**

**a.  Itemizing Each Attorney's Respective Tasks**

The plaintiff has submitted to the court an invoice for $11,448.25 that outlines her

attorney's fees and costs.  Pl.'s Mot., Ex. A, Invoice of Billable Hours.  The defendants allege

that the plaintiff's fee petition is unacceptably vague because it does not identify the individual

attorney who performed each respective task.  Defs.' Opp'n at 6-7.  The defendants assert that by

neglecting to delineate the work that each attorney performed, the plaintiff has failed to adhere to

the DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters ("DCPS Guidelines"),

which provide specific instructions as to how to submit a fee petition.  *Id.* at 7.  As a result, the

defendants argue, the court lacks "sufficient information to determine whether the claimed rates

are appropriate for the work that was performed."  *Id.* at 6.

The plaintiff counters that she complied with the DCPS Guidelines by including a "user

summary" at the end of her invoice.  Pl.'s Reply at 3.  She notes that the summary lists the names

of all staff members who worked on the case, the total number of hours that each expended on

the case, each staff member's respective hourly rate and the total dollar amount that each billed.

*Id.*  The plaintiff further contends that the DCPS Guidelines do not require identification of each

individual attorney who performed specific legal activities, and that the defendants have offered

no legal authority to establish this purported requirement.  *Id.* at 7.

A fee application must provide sufficient detail so as to allow the court to make an

---

[3]     As a threshold matter, the court notes that the defendants do not dispute that the plaintiff is the
prevailing party in the underlying IDEA suit.  *See* Defs.' Opp'n at 1.  Indeed, because
the plaintiff succeeded on her claim in the administrative proceeding, she is the prevailing party
and is therefore entitled to recover reasonable attorney's fees.  *See Buckhannon*, 532 U.S. at 603.

independent determination of whether the charges are reasonable.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  The plaintiff's invoice "need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney."  *Holbrook*, 305 F. Supp. 2d at 45 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327); *see also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006).  Yet a fee petition that does not identify the specific attorneys who performed each respective activity is considered insufficiently detailed.  *Gray v. District of Columbia*, 2011 WL 1561553, at *2 n.5 (D.D.C. Apr. 26, 2011).  Without such information, the court is unable to evaluate whether an attorney's hourly billable rate and billed hours are reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).

Here, the plaintiff's failure to match the tasks with the respective attorneys who undertook them creates ambiguity as to whether the task was performed by an attorney or a paralegal.  Moreover, if the task was indeed carried out by an attorney, the plaintiff's failure to identify that person by name leaves uncertainty as to his or her level of experience.  Because the fee petition fails to provide sufficient detail as to who undertook each individual activity, the court cannot ascertain whether the hourly billing rate for each respective task is reasonable, and thus cannot determine whether the plaintiff's overall request for attorney's fees is reasonable.

Even if the plaintiff's fee petition is somewhat deficient, however, complete denial of fees is inappropriate.  *See Jordan v. Dep't of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982) (holding that complete denial of fees should be reserved for only extreme situations, such as when the petitioner offers no affidavits or timesheets, or when the application is filed in bad

6

faith).  The court may, instead, reduce the overall fee award to account for such deficiencies.  *See*

*Hensley*, 461 U.S. at 433 (noting that "[w]here the documentation of hours is inadequate, the

district court may reduce the award accordingly"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d

962, 973 (D.C. Cir. 2004) (reducing overall fee award by fifty percent where documentation of

time records was deficient); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (applying an

overall reduction where time entries were inadequate).  The court accordingly reduces the overall

fee award by twenty-five percent to account for these and, as indicated below, other deficiencies

in the plaintiff's fee petition.

### b.  Clerical and Other Non-Professional Services

The defendants argue that the plaintiff's counsel inappropriately billed for clerical tasks,

a category of activities that is not compensable under the IDEA.  Defs.' Opp'n at 19.  They

therefore contend that the total 6.34 hours billed for administrative work should be disallowed

from the plaintiff's fee petition, reducing the overall attorney's fees total accordingly.  *Id.* at 20.

The plaintiff responds that these tasks were necessary, *de minimis* clerical functions that cannot

be separated from clearly billable work.  Pl.'s Mot. at 8-9.

Pure clerical tasks are not reimbursable in an award of attorney's fees.  *See Role Models*,

353 F.3d at 973 (stating that "purely clerical or secretarial tasks are not reimbursable at either

attorney or paralegal rates" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)));

*Michigan v. Envtl. Prot. Agency*, 254 F.3d 1087, 1095-96 (D.C. Cir. 2001) (holding that "purely

clerical tasks" are not reimbursable "because they ought to be considered part of normal

administrative overhead").  By contrast, certain *de minimis* clerical tasks may be reimbursable if

they cannot be separated from legal activities.  *Cf. Lopez*, 383 F. Supp. 2d at 25 (explaining that

7

charges for "filing" motions were not reimbursable because they were purely clerical, not *de minimis*).

In this case, the defendants declined to reimburse the plaintiff for activities such as "prepared and tab[bed]" a document and "updated file and filing [a] doc[ument]." *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A. Because these activities were purely clerical, they are not compensable under the IDEA. *See Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009) (denying reimbursement for charge described as "create file; made copies; faxed document").

The plaintiff notes that the defendants also refused to reimburse activities that were not obviously clerical, such as "teleconference with mother," and that they did not explain their reasoning for such refusals. *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A; *Gray*, 2011 WL 1561553, at *5 (stating that the defendant did not explain why tasks such as discussing the case with colleagues were considered clerical). These objections are of the "nit-picking" variety that this Circuit discourages. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-38; *see also Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (declining to "conduct a minute evaluation" of the plaintiffs' fee petition to determine reasonableness of every individual charge). Accordingly, rather than deny reimbursement for all charges that the defendants claim are clerical, the court has factored such purely clerical activities into its overall reduction of the total fee award.

### c. Whether Charges for Activities Are Too Remote in Time From the Merits Hearing

The plaintiff requests attorney's fees for activities that occurred on August 18, 2008. Pl.'s Mot. at 7. The defendants contend that fees for these activities should not be allowed

because such activities occurred three months prior to the November 2008 merits hearing in which the plaintiff received a favorable HOD.  Defs.' Opp'n at 21.  The defendants therefore assert that .65 hours should be disallowed from the plaintiff's fee petition, thereby reducing the total accordingly.  *Id*.  The plaintiff responds that these legal activities for which she was charged are directly related and in close proximity to the November 2008 merits hearing.  Pl.'s Mot. at 7; Pl.'s Reply at 10.

Charges incurred a few months prior to an IDEA merits hearing are not excessively remote as to be excluded from an attorney's fee award.  *See Cox v. District of Columbia*, 754 F. Supp. 2d 66, 77-78 (D.D.C. 2010) (holding that charges for work done less than five months before an IDEA due process hearing were reasonable); *Lax v. District of Columbia*, 2006 WL 1980264, at *4 (D.D.C. July 11, 2006) (holding that "time spent over the course of a year for a particular client" is reasonable, because the plaintiffs tied each charge to a subsequent hearing and it often takes up to a year for an administrative IDEA case to be resolved).  The plaintiff here demonstrates the relevance of the disputed charges to the underlying administrative proceedings, and that these charges were incurred only three months before the merits hearing.  Furthermore, the defendants' objection contests a singular charge that totals less than one hour.  These objections constitute, again, the type of "nit-picking" that this Circuit discourages.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-38; *see also Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (declining to "conduct a minute evaluation" of the plaintiffs' fee petition to determine reasonableness of every individual charge).  Because the disputed charges were incurred less than three months prior to the merits hearing, they are reasonable. Accordingly, the court allows attorney's fees associated with the legal activities that occurred on

9

August 18, 2008.

### d. Entries That Are Vague and Lack Specificity

The defendants further contend that the descriptions of certain charges are so vague that they deprive the court of the ability to determine whether such hours were reasonably expended. Defs.' Opp'n at 22.  The defendants thus argue that 20.41 hours should be disallowed from the plaintiff's fee petition, thereby reducing the total award accordingly.  *Id.*  By contrast, the plaintiff insists that these charges are sufficiently detailed, and that including more detailed information would breach the rule of attorney-client confidentiality.  Pl.'s Mot. at 9-10.

As noted previously, a fee request "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted," but the application must still be sufficiently detailed to allow the court to determine whether the hours claimed are reasonable. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  Where adequate time records are not kept, the court may reduce the overall fee.  *See Hensley*, 461 U.S. at 433.

The defendants object to entries such as ""reviewed of file 4 pm," "prepared and tab," and "reviewed case file & documents."[4]  *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A at 4-5. These descriptions are unintelligible and therefore inadequate because they prevent the court from being able to make an independent determination of whether the hours expended behind such tasks are reasonable.  *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124-25 (D.D.C. 2010) (holding that entries such as "conference with parent" and "telephone call to DCPS" were vague, and reducing overall fee award by ten percent); *Clark v. District of*

---

[4]     Although some of these entries may also be considered clerical, the court will not deduct twice from the fee award for them (i.e. once for being a clerical entry, and then again for being a vague entry).  Instead, these entries are accounted for in the one-time 25% overall reduction of the fee award.

*Columbia*, 674 F. Supp. 2d 149, 158-59 (D.D.C. 2009) (holding that time entries such as "preparation for hearing" or "preparation for school visit" were too vague and thereby reducing the overall fee award by twenty-five percent); *Coleman v. District of Columbia*, 2007 WL 1307834, at *7 (D.D.C. May 3, 2007) (holding that entries such as "conference with co-counsel" lacked sufficient detail). Accordingly, the court has factored the insufficient detail of the plaintiff's charges into its overall reduction of the total fee award.

In addition, the defendants object to an entry on October 9, 2008 for "Read and Reviewed IDEA 2004 statute," in which the plaintiff's attorney billed four hours at $250.00 per hour, which amounted to a total charge of $1000.00. *See* Pl.'s Mot., Ex. A at 2; Defs.' Opp'n, Ex. A at 4. The court may refuse to award fees for hours that were not "reasonably expended." *See Hensley*, 461 U.S. at 434; *see also Kingsberry v. District of Columbia*, 2005 WL 3276193, at *4 (D.D.C. Aug. 9, 2005) (striking 1.2 hours from the plaintiff's fee petition for repeating reviewing or "scanning" the complaint on a second occasion); *Smith v. Roher*, 954 F. Supp. 359, 365-66 (D.D.C. 1997) (excluding individual charges from the plaintiffs' fee petition that were unreasonably protracted). As four hours expended behind reading a statute for an IDEA matter is excessive, the court accordingly excludes it from the plaintiff's fee award.

### e. Duplicative Charges

The defendants contend that certain charges in the plaintiff's invoice are duplicative and therefore not reimbursable. Defs.' Opp'n at 23. The defendants thus argue that 4.2 hours should be further disallowed from the plaintiff's fee petition, reducing the total by an additional $1,145.00. *Id.* The plaintiff responds that some of these seemingly repetitive activities were necessary, instead of being duplicative. Pl.'s Mot. at 13-14. She notes, for example, that she had

11

to prepare for the merits hearing twice because it had been rescheduled.  *Id* at 13.

The number of hours that an attorney expends on a task may be deemed excessive if it involves "duplication of effort."  *See Role Models*, 353 F.3d at 972 (reducing fee award for duplicative work, including charges by two individuals for filing the same brief); *see also Hensley*, 461 U.S. at 434 (hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee petition).  The defendants here object to entries on the plaintiff's invoice that state, "Prepared 5-day disclosure," "Hearing prep re opening statement" and "Reviewed docs & case file."  *See* Defs.' Opp'n, Ex. A at 5.  Yet the defendants offer no explanation beyond a conclusory statement as to why such charges are duplicative; the court therefore declines to eliminate them entirely from the fee petition.  *See Bucher v. District of Columbia*, 2011 WL 1356761, at *7 (D.D.C. Apr. 11, 2011) (holding that the plaintiff's charges were not duplicative even though the language of the entries in question was similar to the language of other entries); *Kingsberry v. District of Columbia*, 2005 WL 3276193, at *4 (D.D.C. Aug. 9, 2005) (holding that charges for two individuals preparing the complaint were not duplicative).

Furthermore, the plaintiff conceded that two charges were duplicative—one from September 4, 2008 and one from October 20, 2008—and reduced her invoice accordingly.  *See* Pl.'s Stmt. of Facts ¶ 9.  To the extent that the descriptions of the disputed charges are unreasonably vague, the court, as previously explained, has already factored the vague charges into its overall 25% reduction of the fee award.  *See supra* Part III.B.1.d; *see also, e.g.*, as noted earlier, *Dickens*, 724 F. Supp. 2d at 124-25 (holding that charges such as "[c]onference with parent" and "[p]repared documents for child's advocate" were inadequately detailed and vague, thus warranting a reduced fee award).

12

**2.  The Reasonableness of the Plaintiff's Attorneys' Respective Hourly Rates**

**a.  The Court Properly Applies the *Laffey* Matrix to Determine Fee Awards**

The plaintiff urges the court to adopt an "adjusted" version of the *Laffey* Matrix when

calculating the proper attorney hourly rate because it is a better representation of prevailing

market rates than the standard version.  *See* Pl.'s Mot. at 5.  The defendants, however, assert that

the plaintiff is not entitled to *Laffey* rates, adjusted or otherwise, because IDEA proceedings are

"not the type of complex federal litigation for which *Laffey* rates were adopted."  Defs.' Opp'n at

9.  Instead, the defendants insist, the DCPS Guidelines contain the appropriate fee schedule that

should be applied ("DCPS fee schedule").  *Id.* at 10; Defs.' Opp'n, Ex. B, DCPS Guidelines for

Attorneys Fees, at 3.  The plaintiff counters that the DCPS fee schedule is "grossly antiquated,"

and that it does not allow for any upward adjustment for standard of living increases or inflation.

Pl.'s Mot. at 5.

This court has previously held that attorney's fees in IDEA actions are presumptively

reasonable if they conform to the *Laffey* Matrix.  *See Jackson v. District of Columbia*, 696 F.

Supp. 2d 97, 102 (D.D.C. 2010) (holding that the *Laffey* Matrix is the proper formula to

determine the prevailing market rate for legal services rendered in connection with IDEA

administrative proceedings).  Other members of this court have reached similar conclusions.

*See, e.g.*, *Brown v. Jordan P.C.S.*, 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (holding that the

plaintiffs' hourly rates were reasonable because they conformed to the updated *Laffey* Matrix and

were customary for similar cases); *Kaseman*, 329 F. Supp. 2d at 25-26 (holding that the

plaintiffs' counsel's rate was reasonable because it was below the applicable *Laffey* Matrix rate);

*Nesbit v. District of Columbia*, Civ. No. 01–2429 (D.D.C. Nov. 4, 2003) (Order at 1) (holding

13

that an hourly billing rate in accordance with the *Laffey* Matrix was reasonable).

Furthermore, this court has already rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirms that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix.  *See Jackson*, 696 F. Supp. 2d at 102 (holding that IDEA administrative proceedings, which require expert testimony regarding whether a student has been denied a FAPE, are sufficiently complex to warrant application of the *Laffey* Matrix); *Nesbit*, Civ. No. 01–2429 (D.D.C. Nov. 4, 2003) (Order at 1) (refusing to create an exception to the application of the *Laffey* Matrix for IDEA litigation); *see also Cox*, 754 F. Supp. 2d at 76 (holding that counsel must have specialized knowledge of the bureaucracy and practices of DCPS to handle IDEA cases).  Similarly, this court has rejected the application of the DCPS fee schedule to determine prevailing attorney rates for IDEA cases.  *See Jackson*, 696 F. Supp. 2d at 103 (declining to apply the DCPS fee schedule because the defendant provided no evidence to show how it represented prevailing market rates and because precedent supported application of the *Laffey* Matrix).  The defendants here have not offered any evidence to indicate the methodology by which the DCPS fee schedule was calculated, nor why it should be applied in this case.  *See Cox*, 754 F. Supp. 2d at 76 (holding that the *Laffey* Matrix should apply because the defendant offered "no reasoned defense for its own Guidelines").  The court therefore declines to apply the DCPS fee schedule to this case.

With respect to the plaintiff's request to apply an adjusted *Laffey* Matrix, the court notes that two versions of the *Laffey* Matrix exist in the District of Columbia: the "U.S. Attorney's Office *Laffey* Matrix" and the "Adjusted *Laffey* Matrix."  *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *see also Covington v. District of Columbia*, 57 F.3d 1101,

1109 (D.C. Cir. 1995) (noting that "plaintiffs may point to such evidence as an updated version of the *Laffey* Matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community"). The U.S. Attorney's Office Matrix "calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the Consumer Price Index ("CPI") for the Washington, D.C. area for the prior year." *Smith*, 466 F. Supp. 2d at 156; *see also* U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011). By contrast, the Adjusted *Laffey* Matrix, offered by the plaintiff, "calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based." *See Smith*, 466 F. Supp. 2d at 156 (quoting *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000)).

Although both matrices have been approved for use as evidence of prevailing market rates, this court has consistently applied the U.S. Attorney's Office *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 104. Accordingly, the court adopts the U.S. Attorney's Office version of the *Laffey* Matrix, in order to determine the prevailing market rate for attorney's fees in this case.

### b.  Applicable Rates for Plaintiff's Attorneys

The defendants offer some additional objections to the plaintiff's requested hourly billing rates. First, they contend that because the plaintiff's fee petition is impermissibly vague, they are unable to determine the reasonableness of the rates that were used to calculate the amount of requested attorney's fees. Defs.' Opp'n at 6. Second, the defendants insist that the plaintiff has failed to meet her burden of establishing her counsel's qualifications and experience, asserting

that the only pieces of evidence that she has provided are "conclusory allegations, insufficient to support an award" of attorney's fees. *Id.* at 8. The defendants further argue that the sworn declaration from one of the plaintiff's attorneys does not include information about whether the plaintiff's attorneys have been admitted to the District of Columbia Bar, nor any indication of the prevailing market rates that are enjoyed by special education attorneys. *Id.* at 8-9.

The plaintiff, in turn, contends that the "user summary" at the end of her invoice provides sufficient detail by listing the name of each staff member who worked on the case, the total number of hours that each expended, their respective hourly rates and the total dollar amount that each billed. Pl.'s Reply at 3. Furthermore, she asserts that her attorney's sworn declaration contains sufficient proof of her counsel's qualifications, and that she has satisfied her burden of establishing the reasonableness of her requested rates. *Id.* at 3-4.

The party requesting attorney's fees must submit evidence showing "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *See Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The prevailing market rate in the *Laffey* Matrix is "but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application." *Jackson*, 696 F. Supp. 2d at 104; *see also Covington*, 57 F.3d at 1109 (holding that plaintiffs may provide evidence to supplement the *Laffey* Matrix, including fees awarded to attorneys with similar qualifications in comparable cases). The prevailing market rate "provide[s] merely a starting point" for determining the reasonableness of a billing rate. *Jackson*, 696 F. Supp. 2d at 104. The fee applicant should also submit evidence, including affidavits, regarding her counsel's general billing practices, skill, experience and reputation. *See Nat'l Ass'n of Concerned*

*Veterans*, 675 F.2d at 1326.  Once the plaintiff has met this burden, the defendant may then rebut

the presumption of reasonableness by offering "specific contrary evidence."  *Covington*, 57 F.3d

at 1109.

In this case, the plaintiff submitted a sworn declaration from her attorney in support of

her requested rates.  *See* Pl.'s Mot., Ex. B, Decl. of Qualifications and Experience of Individual

Special Educ. Legal Providers Employed by the Chris Anwah Law Firm ("Adewusi Decl.").

The declaration attests to the attorneys' respective educational background, bar admission status

and special education experience and training.  *See generally id.*  The plaintiff also notes that her

attorneys' law firm has been "practicing special education law exclusively since 1997."  Pl.'s

Mot. at 3.  Although the plaintiff did not submit evidence that described her attorneys' standard

billing practices, the information that she did submit regarding their qualifications and

experience in litigating IDEA cases sufficiently satisfies her burden of proving that her requested

rates are reasonable.  *See, e.g.*, *Alfonso*, 464 F. Supp. 2d at 6-7 (holding that the plaintiffs met

their burden by "highlighting the experience and qualifications of plaintiffs' counsel's firm and

the firm's long history of practice in this area of law"); *Kaseman*, 329 F. Supp. 2d at 26 (holding

that the plaintiff established the reasonableness of her requested rate even though she did not

attest to the "actual rates charged by lawyers who do similar work" nor to the "the reputations of

plaintiffs' counsel").

By contrast, the defendants have not provided specific evidence to rebut this presumption

of reasonableness, such as documentation of rates that are awarded in similar cases.  *See*

*Covington*, 57 F.3d at 1109-10 (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326)

(stating that "in the normal case the [defendant] must either accede to the applicant's requested

rate or provide specific contrary evidence tending to show that a lower rate would be appropriate" (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326)); *Brown*, 539 F. Supp. 2d at 438 (noting that the "defendant's vague allegations that the plaintiff's amounts are 'excessive' are insufficient to bar recovery"); *Abraham v. District of Columbia*, 338 F. Supp. 2d at 124 (applying the *Laffey* Matrix where the defendant submitted no evidence to support its request to reduce rates).   Because the plaintiff has met her burden of providing evidence that demonstrates her attorneys' skill, experience and reputation, the court concludes that she has established a presumption of the reasonableness of the billing rates sought in her fee application.

Accordingly, the court will evaluate each of her attorneys' respective hourly rates according to the U.S. Attorney's Office *Laffey* Matrix.   In doing so, the court addresses specific objections raised by the defendants.

### i. Fatmata Barrie

The plaintiff seeks an hourly billing rate of $300.00 for Fatmata Barrie, who was admitted to the D.C. Bar in February 2004.  Adewusi Decl. ¶ 1.  The defendants argue that the plaintiff fails to establish that Barrie possesses a level of skill and experience that justifies a $300.00 billing rate.  Defs.' Opp'n at 11.

Attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix.  *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102.  Barrie performed work in October and November 2008, when she had been a member of the D.C. Bar for three years.[5]  *See* Pl.'s Mot., Ex. A; Adewusi Decl. ¶ 1.  The *Laffey* Matrix hourly rate for an attorney with Barrie's experience during the fall

---

[5]     The *Laffey* Matrix calculates hourly rates based on the number of years that one has been out of law school.  *See generally* U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011). Because the plaintiff does not indicate when Barrie graduated from law school, the court has calculated her appropriate hourly rate based on her bar admission date.

of 2008 is $225.00.  "When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix."  *Alfonso*, 464 F. Supp. 2d at 7.  The court accordingly reduces Barrie's hourly rate to $225.00.

### ii.  Annie Pressley

The plaintiff seeks an hourly rate of $165.00 for Annie Pressley.  Adewusi Decl. ¶ 2. Pressley is a "special education advocate/paralegal" who graduated from the University of the District of Columbia School of Law in "2004-2005."  *Id.*  She is neither a licensed attorney nor a member of the D.C. Bar.  Defs.' Opp'n at 12.  The defendants contend that the IDEA does not require the DCPS to pay for the services of educational advocates.  *Id.*  The plaintiff asserts, however, that section (h) of the DCPS Guidelines permits payment of fees to educational advocates.  Pl.'s Reply at 6-7.  The plaintiff further notes that attorneys require the services of paralegals and advocates in order to adequately represent their clients.  *Id.* at 7.

The court in *Bowman v. District of Columbia* held that court-appointed educational advocates may not recover attorney's fees under the IDEA.  496 F. Supp. 2d 160, 167 (D.D.C. 2007).  The educational advocates in *Bowman*, however, were appointed by the court to make educational decisions for children who were wards of the district, so that the advocates effectively acted as "parents" under the IDEA.  *See id.*  Accordingly, even though they were licensed attorneys, they could not recover fees as educational advocates because they were not acting in an attorney-client capacity.  *See id.*

Unlike the attorneys in *Bowman*, Pressley was employed by the Chris Anwah Law Firm, instead of being appointed by the court as an educational advocate.  *See* Adewusi Decl. ¶ 2.

Furthermore, Pressley's work on this matter was similar to that performed by the billing

attorneys.  *See* Pl.'s Mot., Ex. A.  Because she is not a member of the D.C. Bar, however,

Pressley is not entitled to attorney rates.  *See Dickens*, 724 F. Supp. 2d at 120 (holding that

attorneys not admitted to the D.C. Bar are not entitled to reimbursement, but awarding fees at

paralegal rates as equitable relief); *Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 112-13

(D.D.C. 2007).  Pressley is described as a "paralegal" in the plaintiff's declaration, and the court

accordingly reduces her hourly rate to $85.00, consistent with the rate charged by paralegals at

the Chris Anwah Law Firm.  *See* Adewusi Decl. ¶ 4; *Dickens*, 724 F. Supp. 2d at 120 (awarding

fees below *Laffey* rates because "[a]ctual billing practices factor into a court's discretionary

assessment of the reasonableness of rates").  Because this hourly rate is already lower than the

paralegal rate set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

### iii.  Samar Malik

The plaintiff seeks an hourly rate of $200.00 for Samar Malik.  Adewusi Decl. ¶ 3.  It

appears that Malik was also not admitted to the D.C. Bar during the period for which attorney's

fees are sought.  *See id.*  Accordingly, the defendants contend that Malik's practice was not

authorized.  Defs.' Opp'n at 13.  They further argue that even if her practice was authorized, the

plaintiff has not provided sufficient evidence that Malik possesses "a level of experience and

skill, or an adequate reputation" to support a $200.00 billing rate.  *Id.*  The defendants assert,

therefore, that the hours claimed for Malik should be reduced to reflect a rate applicable to

paralegals.  *Id.* at 14.

As previously noted, attorneys who are not admitted to the D.C. Bar are not entitled to

reimbursement at attorney rates in IDEA proceedings.  *See Dickens*, 724 F. Supp. 2d at 120;

*Agapito*, 477 F. Supp. 2d at 112-13.  Accordingly, the court reduces Malik's hourly rate to

$85.00, the rate charged by paralegals at the Chris Anwah Law Firm.  Because this hourly rate is

already lower than the paralegal rate set forth in the *Laffey* Matrix, the court need not reduce the

rate any further.

### iv.  Mireya Amaya

The plaintiff seeks an hourly rate of $85.00 for Mireya Amaya, who is a paralegal.

Adewusi Decl. ¶ 4.  The defendants do not object to this rate.  Defs.' Opp'n at 14.  Therefore, the

court's award reflects this hourly rate for Amaya.

### v.  LaDonna Rogers

The plaintiff seeks an hourly rate of $250.00 for LaDonna Rogers, who was admitted to

the D.C. Bar in July 2000.  Adewusi Decl. ¶ 5.  The defendants contend that the plaintiff fails to

establish that Rogers possesses the experience and skills necessary to support a $250.00 billing

rate.  Defs.' Opp'n at 14-16.

As indicated earlier, attorney's fees are presumptively reasonable if they conform to the

*Laffey* Matrix.  *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102.  Rogers performed work for this case

in the fall of 2008, at which point she had been a member of the D.C. Bar for eight years.  *See*

Pl.'s Mot., Ex. A; Adewusi Decl. ¶ 5.  The *Laffey* Matrix rate for an attorney with Rogers'

experience in the fall of 2008 is $330.00 per hour.  Because the plaintiff's requested hourly rate

of $250.00 is below the rate set forth in the *Laffey* Matrix, the court deems it reasonable.

### vi.  Allen Mohaber

The plaintiff seeks an hourly rate of $250.00 for Allen Mohaber.  Adewusi Decl. ¶ 6.

Mohaber is not a member of the D.C. Bar.  *Id.*; Defs.' Opp'n at 16.  The defendants thus contend

that Mohaber is not entitled to reimbursement at attorney rates.  Defs.' Opp'n at 16.

Furthermore, because the plaintiff indicates that Mohaber was "employed as an educational advocate," Adewusi Decl. ¶ 6, the defendants also argue that he should not be compensated, as the IDEA does not require the DCPS to pay for the services of educational advocates, Defs.' Opp'n at 16.  The plaintiff responds again, however, that section (h) of the DCPS Guidelines permits payment of fees to educational advocates.  Pl.'s Reply at 6-7.  The plaintiff further notes that attorneys require the services of paralegals and advocates in order to adequately represent their clients.  *Id.* at 7.

As noted earlier, a court-appointed educational advocate may not recover attorney's fees under the IDEA.  *See Bowman*, 496 F. Supp. 2d 160, 167 (D.D.C. 2007).  Mohaber, however, was not appointed by the court as an advocate.  *See* Adewusi Decl. ¶ 6.  Mohaber's work on this matter did not involve making educational decisions for a ward of the district, but was instead similar to the tasks performed for the client by billing attorneys at the Chris Anwah Law Firm. *See* Pl.'s Mot., Ex. A.  Thus, Mohaber is not entirely barred from recovery for his services.  Yet because he is not a member of the D.C. Bar, Mohaber is not entitled to reimbursement at attorney rates.  *See Dickens*, 724 F. Supp. 2d at 120 (holding that attorneys not admitted to the D.C. Bar are not entitled to reimbursement, but awarding fees at paralegal rates as equitable relief); *Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 112-13 (D.D.C. 2007).  Furthermore, the plaintiff does not specify whether Mohaber was employed by the Chris Anwah Law Firm. Adewusi Decl. ¶ 6.  Accordingly, the court reduces Mohaber's hourly rate to $85.00, the rate charged by paralegals at the Chris Anwah Law Firm.

### vii.  Christopher N. Anwah

The plaintiff seeks an hourly rate of $350.00 for Christopher N. Anwah, an attorney who was admitted to the D.C. Bar in January 1999.  Adewusi Decl. ¶ 7.

Attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix.  *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102.  Anwah performed work in the fall of 2008, when he had been a member of the D.C. Bar for ten years.  *See* Pl.'s Mot. Ex. A; Adewusi Decl. ¶ 7.  The *Laffey* Matrix rate for an attorney with Anwah's experience in the fall of 2008 is $330.00 per hour.  "When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix."  *Alfonso*, 464 F. Supp. 2d at 7.  The court accordingly reduces Anwah's hourly rate to $330.00.

### 3.  The Plaintiff's Fee Award is Subject to the Fee Cap

The plaintiff argues that her fee award should not be affected by the District of Columbia Appropriations Act's $4,000.00 fee cap on attorney's fees awards.  Pl.'s Mot. at 6.  She reasons that Congress removed the fee cap for the "2008[-]2009" fiscal year, such that effective October 1, 2008, the fee cap no longer applies to attorney's fees awards.  *Id.*  In addition, the plaintiff notes that even if the defendants are limited by statute from paying more than the $4,000.00 fee cap, the court may still award fees in excess of that cap amount.  Pl.'s Reply at 5.

The defendants, on the other hand, contend that the plaintiff's fee award is subject to the statutory fee cap.  Defs.' Opp'n at 2.  They acknowledge that the cap was recently lifted.  *Id.* at 3.  They argue, however, that the cap still applies to fee requests associated with administrative complaints that were filed prior to the statute's enactment on March 11, 2009.  *Id.* at 3.  Because the plaintiff's due process complaint was filed in 2008, before March 2009, the defendants assert

that the fee cap continues to apply. *Id.* The defendants also insist that although the court may make an award to the plaintiff above the fee cap, the plaintiff is not entitled to any additional fees beyond those already paid by the DCPS. *Id.* at 3-4.

The 2008 Consolidated Appropriations Act caps the District of Columbia's payment of IDEA attorney's fees at $4,000.00 per action. *See* Pub. L. No. 110-161, 121 Stat. 1844 (2007); *see also Blackman v. District of Columbia*, 633 F.3d 1088, 1089-90 (D.C. Cir. 2011). Although the District of Columbia Appropriations Act of 2009 does not include the fee cap provision, it does provide that "none of the funds contained in this Act . . . may be made available . . . to pay the fees of an attorney who represents a party in or defends an IDEA proceeding which was initiated prior to the date of the enactment of this Act in an amount in excess of $4,000.00 for that proceeding." Pub. L. No. 111-8, 123 Stat. 524 (2009). This act, therefore, lifted the fee cap for proceedings initiated after its March 11, 2009 enactment date, but capped reimbursement for fees incurred in proceedings that were initiated before that date. *See id.*; *see also Blackman*, 633 F.3d at 1090.

Here, the plaintiff's fee claim is based on an administrative proceeding that was initiated in 2008, *i.e.* before the enactment of the 2009 Act. It is therefore subject to the fee cap. *See Blackman*, 633 F.3d at 1090 (holding that the termination of the fee cap did not affect litigation in progress when the fee cap was in effect). Yet while the District of Columbia is statutorily limited in the award that it may pay, the court may still award attorney's fees and costs greater than the cap. *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000). The court may not, however, enforce the payment of any award above the fee cap amount. *See Jackson*, 603 F. Supp. 2d at 96 (limiting the plaintiffs' recovery to $4,000.00 but noting that the court is not

24

precluded from awarding fees above the cap); *see also Pullins-Graham v. District of Columbia*, 2004 U.S. Dist. LEXIS 27805, at **11-12 (D.D.C. Sept. 16, 2004) (holding that the defendants could not be held in contempt for failure to pay more than the fee cap amount because the court "cannot order the [d]efendants to violate an act of Congress to pay the total award").

### 4.  Summary of Fees Allowed

In sum, the court awards the plaintiff a total of $7,430.18 in attorney's fees and costs, after the adjustments summarized in the chart below.  According to the parties, the defendants have already paid the plaintiff $4,000.00, leaving a total unpaid balance of $3,430.18.

| Name | Hours | Requested Hourly Rate | Adjusted Hourly Rate | Amount Allowed |
|---|---|---|---|---|
| Allen Mohaber | 3.00 | $250.00 | $85.00 | $255.00 |
| Annie Pressley | 0.65 | $165.00 | $85.00 | $55.25 |
| Christopher N. Anwah | 5.10 | $350.00 | $330.00 | $1,683.00 |
| Fatmata Barrie | 22.83 | $300.00 | $225.00 | $5,136.75 |
| LaDonna Rogers | 10.00 | $250.00 | $250.00 | $2,500.00 |
| Mireya Amaya | 0.42 | $85.00 | $85.00 | $35.70 |
| Samar Malik | 16.74 | $200.00 | $85.00 | $1422.90 |
| | | | Fees Owed Before Any Reductions | $11,088.60 |
| | | | Fees Owed After Deducting $1000.00 for Excessive Charge | $10,088.60 |
| | | | Fees Owed After Deducting $181.70 Conceded by Plaintiff | $9906.90 |
| | | | **Total Awarded Fees After 25% Overall Reduction** | $7,430.18 |

**IV.  CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion

for attorney's fees and costs.  An Order consistent with this Memorandum Opinion is separately

and contemporaneously issued this 30th day of September, 2011.

RICARDO M. URBINA
United States District Judge

26